IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEF CHRISTOFFER, | ) CASE NO.  5:24-CV-01454-DAR |
| Plaintiff, | ) |
| vs. | ) JUDGE DAVID A. RUIZ<br>) UNITED STATES DISTRICT JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) MAGISTRATE JUDGE<br>) JONATHAN D. GREENBERG |
| Defendant. | ) **REPORT AND RECOMMENDATION** |

Plaintiff, Josef Christoffer ("Plaintiff" or "Christoffer"), challenges the final decision of Defendant, Frank Bisignano,[1] Commissioner of Social Security ("Commissioner"), denying his application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be VACATED AND REMANDED.

## I.  PROCEDURAL HISTORY

In November 2018, Christoffer filed an application for POD and DIB, alleging a disability onset date of November 2, 2012, and claiming he was disabled due to low vision or vision problems, major depression with psychosis, generalized anxiety disorder, panic attacks, psychosis not otherwise specified,

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.

1

sleep disorder, rule out schizoaffective disorder depressive type, rule out cluster A or C personality disorder, vitamin D deficiency, left hip, knee, and neck pain, post-traumatic stress disorder, and hoarding disorder. (Transcript ("Tr.") 10, 79.) The application was denied initially and upon reconsideration, and Christoffer requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 10.)

On September 21, 2023, an ALJ held a hearing, during which Christoffer, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*) On September 29, 2023, the ALJ issued a written decision finding Christoffer was not disabled. (*Id.* at 10-17.) The ALJ's decision became final on June 20, 2024, when the Appeals Council declined further review. (*Id.* at 1-6.)

On August 26, 2024, Christoffer filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 6, 8-9.) Christoffer asserts the following assignments of error:

> (1) The ALJ failed to properly evaluate the functional impact of Plaintiff's mental limitations on his residual capacity to perform his "highly skilled" past relevant work.

(Doc. No. 6 at 6.)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Christoffer was born in May 1961 and was 62 years-old at the time of his administrative hearing (Tr. 10, 78), making him a "person of advanced age" under Social Security regulations. *See* 20 C.F.R. § 404.1563(e). He has at least a high school education. (Tr. 554.) He has past relevant work as a quality control engineer. (*Id*. at 16.)

### B. Relevant Medical Evidence[2]

Christoffer's medical history includes diagnoses of anxiety and depressive disorders. (*Id.* at 629-

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs. In addition, as Christoffer challenges only the ALJ's mental findings, the Court further limits its discussion of the evidence to Christoffer's mental impairments.

2

30.)

On September 20, 2012, Christoffer saw Shawna Riddle, M.D., for follow up. (*Id.* at 667.) Christoffer reported that his job had been extended for four weeks, and he had had a couple of jobs "in the works." (*Id.*) He told Dr. Riddle he had been drinking the same amount and felt like he could not cut back. (*Id.*) Christoffer reported he had not been taking his Ativan or Celexa, and that when he took them before he felt like he didn't see much improvement. (*Id.*) Dr. Riddle restarted Christoffer on citalopram. (*Id.* at 668.)

On October 11, 2012, Christoffer saw Kuntal Thaker, M.D., for a colon cancer screening. (*Id.* at 661.) Christoffer denied depression, "feelings of doom," and lack of motivation. (*Id.* at 662.) On examination, Dr. Thaker found Christoffer alert and oriented with a normal affect. (*Id.*)

On September 2, 2014, Christoffer saw Megan Robinson, P.A., for follow up and reported that he continued to experience "extreme anxiety." (*Id.* at 650.) He told Robinson he had been unable to drive a friend to a doctor appointment and felt his anxiety was getting worse. (*Id.*) Christoffer saw a therapist weekly, but he was unsure that therapy was helping. (*Id.*) Robinson noted that Christoffer was "[v]ery hesitant" to take medications for his anxiety. (*Id.*) On examination, Robinson found Christoffer demonstrated an appropriate and congruent thought process but took long pauses before responding to questions. (*Id.* at 651.) Christoffer declined medication for his anxiety. (*Id.*)

On December 3, 2014, Chrisotffer saw Robinson for complaints of worsening anxiety and frequent panic attacks. (*Id.* at 647-48.) Robinson noted that Christoffer "continue[d] to be unsure about starting anti-anxiety medication." (*Id.* at 647.) Christoffer told Robinson he was applying for disability "and was told he need[ed] to be under treatment by an MD for his case to be 'credible,'" so Robinson recommended Christoffer establish care with one of her colleagues. (*Id.*) Robinson noted Christoffer lived alone with a cat and enjoyed playing bass guitar in a band. (*Id.* at 648.) On examination, Robinson found good insight

3

and judgment. (*Id.* at 649.) Christoffer denied suicidal and homicidal ideation. (*Id.*)

On December 24, 2014, Christoffer saw Jack Watson, M.D., for a physical examination and reported chronic depression and persistent anxiety. (*Id.* at 644.) Christoffer told Dr. Watson he had begun taking Prozac a week and a half ago. (*Id.*) He reported having supportive friends and that he was seeing a therapist. (*Id.*) Christoffer drank three to four alcoholic beverages a day. (*Id.*) On examination, Dr. Watson found a normal, non-tearful affect and noted that Christoffer answered all questions appropriately. (*Id.* at 646.)

On March 17, 2015, Christoffer saw PA Robinson for follow up and reported that while he was unsure whether Prozac was helping, his symptoms were not worsening. (*Id.* at 641-42.) Robinson noted Christoffer had just started an increased dose of Prozac a week ago. (*Id.*)

In March 2017, Robinson noted Christoffer had been without insurance "for some time" and that they would "get him caught up on some chronic issues." (*Id.* at 638-39.) At that time, Christoffer lived alone with his cat and played bass guitar in a band. (*Id.* at 640.)

In November 2018, Christoffer began treating with Karsten M. Heil, M.D. (*Id.* at 767.) At Christoffer's initial evaluation, Dr. Heil found Christoffer was suffering from auditory and visual hallucinations, sleep disturbance, depressed mood, and anxiety. (*Id.*) Christoffer reported he had been increasingly isolating himself due to his symptoms. (*Id.*) Dr. Heil diagnosed Christoffer with unspecified psychosis and started him on antidepressant medication. (*Id.*) Later, Dr. Heil switched Christoffer to an antipsychotic medication. (*Id.*)

In a letter dated November 13, 2019, Dr. Heil informed the agency that he had seen Christoffer every 4 weeks since November 2018. (*Id.*) Christoffer and his sister told Dr. Heil that Christoffer's "psychiatric symptoms became severe in late 2013 and have persisted since them [sic], preventing him from employment." (*Id.*) Dr. Heil opined that in November 2018, Christoffer was markedly impaired in

his ability to interact with others, concentrate, and manage his own affairs.  (*Id.*) Dr. Heil further opined that Christoffer was unable to work at that time, and even with "maximal treatment attempts," Christoffer had not regained his ability to work.  (*Id.*)

On November 30, 2018, Richard Linzer, MA, LMFT, wrote a letter in support of Christoffer's disability application.  (*Id.* at 761.)  Linzer informed the agency he had seen Christoffer weekly for psychotherapy 82 times between June 2, 2014, and June 22, 2016, to address Christoffer's "long-standing issues of depression and anxiety."  (*Id.*)  Linzer opined that in the two years he saw Christoffer, Christoffer had made "little progress in developing coping skills" for managing his anxiety and depression.  (*Id.*)  While Christoffer attended therapy regularly, Linzer opined that participation "seemed difficult and very uncomfortable" for Christoffer.  (*Id.*)

**C.     State Agency Reports**

On January 30, 2019, Tiffany Iskander, Ph.D., reviewed the file and determined the evidence was insufficient to determine the Paragraph B and Paragraph C criteria.  (*Id.* at 83-84.)  Dr. Iskander explained:

> Despite treatment records during the DIB assessment timeframe, functional limitations cannot be determined. Though there is functional information interspersed throughout the MER there is not enough comprehensive functional evidence at any given time to determine the claimants [sic] level of functioning during the time period. This claim is therefore insufficient.

(*Id.* at 84.)

On April 17, 2019, on reconsideration, F. Mateus, M.D., affirmed Dr. Iskander's findings.  (*Id.* at 92-94.)

**D.     Hearing Testimony**

During the September 21, 2023 hearing, Christoffer testified to the following:

- During the relevant time period, he saw and heard things and was very depressed and anxious. (*Id.* at 41.)  He had panic attacks. (*Id.* at 42.)  He experienced his first panic attack at age 25. (*Id.*)  He thought he was having a heart attack. (*Id.*)  He had chest

5

pain and shortness of breath. (*Id.*) He does not drive. (*Id.* at 46.) He first experienced hallucinations in high school. (*Id.* at 48.)

The VE testified Christoffer had past work as a quality control engineer. (*Id.* at 51.) The ALJ then posed the following hypothetical question:

> Okay. I have two hypothetical questions to ask you. The first one is, assume an individual of his age, education, and work experience. This person is limited to light work as defined by the regulations with only occasional climbing of ramps or stairs, occasional climbing of ladders, ropes, and scaffolds. This person is limited to avoiding concentrated exposure to unprotected heights. This individual should also be limited to occasional kneeling, crouching, and crawling. Could that individual be able to perform his past work?

(*Id.* at 52.)

The VE testified the hypothetical individual would be able to perform Christoffer's past work as a quality control engineer. (*Id.*)

The ALJ then posed a second hypothetical:

> For the second hypothetical, same restrictions as the first. But now, this individual would have additional restrictions of performing simple tasks and following simple instructions with few, if any, workplace changes, no strict production quotas, i.e., assembly line work. With those additional restrictions, could that individual be able to perform his past work?

(*Id.*)

The VE testified the hypothetical individual would not be able to perform Christoffer's past work as a quality control engineer. (*Id.*) The VE further testified that there were no transferable skills to unskilled work. (*Id.*) The VE further testified the hypothetical individual would be able to perform other representative jobs in the economy, such as cafeteria attendant, cleaner, housekeeper, and office helper. (*Id.* at 52-53.)

### III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically

6

determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 404.1520(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, Christoffer was insured on the alleged disability onset date, November 2, 2012, and remained insured through December 31, 2017, the date last insured ("DLI"). (Tr. 10.) Therefore, in order to be entitled to POD and DIB, Christoffer must establish a continuous twelve-month period of disability commencing between these dates. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 2, 2012 through his date last insured of December 31, 2017 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairment: left knee osteoarthritis (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional climbing of ramps and stairs, ladders, ropes and scaffolds; avoiding concentrated exposure to unprotected heights; and is limited to occasional kneeling, crouching and crawling.

6. Through the date last insured, the claimant was capable of performing past relevant work as a quality control engineer as generally performed. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 2, 2012, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(f)).

(Tr. 12-17.)

## V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

In his sole assignment of error, Christoffer argues that the ALJ "failed to properly evaluate the functional impact of [Christoffer's] mental limitations on his residual capacity to perform his 'highly skilled' past relevant work." (Doc. No. 6 at 6.) Christoffer asserts that the ALJ erred in his determination that because the ALJ found only mild limitations in the Paragraph B criteria, Christoffer's mental impairments were non-severe. (*Id.* at 7.) Christoffer also argues that:

> As the ALJ conceded that Plaintiff has limitations, albeit mild, in his ability to perform even "basic mental work activities," meaningful review of the ALJ'S

> [sic] Step 4 finding necessitates an explanation as to how the ALJ implicitly concluded that Plaintiff's mental impairments have absolutely no impact whatsoever on his capacity to perform the far more complex mental activities required for the performance of "highly skilled" work.

(*Id.* at 9.) Because the ALJ failed to provide such an explanation in this case, Christoffer maintains that remand is required. (*Id.* at 11-12.)

The Commissioner responds that the ALJ properly considered Christoffer's mental functioning. (Doc. No. 8 at 5.) The Commissioner argues that the Court should reject Christoffer's "primary argument" that "the ALJ erred by failing to incorporate the mild mental limitations he identified at step two into the RFC finding." (*Id.* at 6.) While the ALJ must consider a claimant's severe and non-severe impairments in formulating the RFC, the ALJ must only include limitations from an impairment if it affects a claimant's capacity to work. (*Id.*) As the ALJ considered Christoffer's mental impairments in the RFC analysis, nothing more was required. (*Id.* at 7.) The Commissioner further argues:

> Finally, Plaintiff's focus on the ALJ's step-four finding that Plaintiff could return to his highly skilled past relevant work is misplaced. *See* Pl.'s Br. 8-9. The agency's disability evaluation proceeds sequentially. *See* 20 C.F.R. § 404.1520(a)(4). Having reasonably determined that Plaintiff's mental impairments were not severe and that mental limitations were not warranted in the RFC, the ALJ was entitled to rely on the vocational expert's testimony that Plaintiff remained capable of performing his past work based on the assessed RFC. That is, because the RFC need only include limitations supported by the record, Plaintiff's attack on the step-four finding is unavailing. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

(*Id.* at 8-9.)

In reply, Christoffer argues that the Step Two severity finding is limited to Christoffer's ability to perform "**basic**" work activities;" however, the ALJ then found Christoffer capable of performing his highly skilled or "**complex**" past work. (Doc. No. 9 at 2) (emphasis in original). Christoffer asserts that the Commissioner is "unable to point to anywhere in the ALJ's decision where the ALJ can be said to

11

have expressed, let alone explained, a finding about Plaintiff's degree of limitation in the performance of more complex work activities." (*Id.*) Christoffer argues that "it is *possible* that the ALJ did consider the issue and implicitly found that Plaintiff's mental impairments have absolutely no limiting effect on his capacity for **complex** mental activities, '[b]ut we cannot know that because the ALJ never said so.'" (*Id.*) (emphasis in original) (citation omitted).

At Step Two, the ALJ found in part as follows:

> The claimant also has medically determinable mental impairments of depression and generalized anxiety disorder, which considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were also not severe prior to the date last insured. Treatment records note that the claimant had complaints of panic attacks and had diagnoses of generalized anxiety disorder and depression. The evidence indicates that he was prescribed Prozac and also underwent therapy from June 2, 2014 to June 22, 2016. His therapist, Richard Linzer, MA, LMFT, indicated that the claimant made little progress in developing coping skills dealing with his anxiety and depression. However, the evidence does not include these therapy records. Further, physical exams in the record noted the claimant was alert and oriented x 3 with normal affect, appropriate and congruent thought process, and good insight and judgment. Moreover, the evidence indicates that while the claimant stopped working as an engineer in 2012 when his company closed, a treatment record dated July 7, 2017 noted that he was playing bass guitar in a band (Exhibit 1F, pp. 6, 9, 14, 16, 18, 21, 23, 34, 40; 2F, pp. 8, 10; 3F).

> In making this finding that the claimant's mental impairments were not severe prior to the date last insured, I considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria. The evidence establishes that the claimant had mild limitations in understanding, remembering or applying information, in interacting with others, in concentrating, persisting or maintaining pace, and in adapting or managing oneself. Therefore, because the claimant's medically determinable mental impairments caused no more than "mild" limitation in any of the functional areas, the evidence establishes that the claimant's anxiety and depression were not severe (20 CFR 404.1520a(d)(1)).

(Tr. 13.)

In the RFC analysis, the ALJ found in part as follows:

> The State Agency mental capacity assessments completed by Tiffany Iskander, Ph.D. dated January 30, 2019 and F. Mateus, M.D. dated April 17, 2019 are also not persuasive because the consultants found insufficient evidence but the overall evidence is sufficient and establishes that the claimant did not have a severe mental impairment prior to his date last insured (Exhibits 1A, 3A).
>
> The record includes a letter from Richard Linzer, MA, LMFT dated November 30, 2018 which indicated that he saw the claimant weekly for psychotherapy 82 times between June 2, 2014 and June 22, 2016. He noted that the claimant wanted to address longstanding issues of depression and anxiety but the claimant made little progress in developing coping skills for dealing with these two issues in the two years that they met even though he attended regularly. Mr. Linzer noted that participation seemed difficult and very uncomfortable for the claimant. This letter is not persuasive because even though it is generally consistent with the evidence, it does not set forth specific limitations regarding the claimant's ability to work (Exhibit 3F).
>
> The evidence also includes a letter from Karsten M. Heil, M.D. dated November 13, 2019, which is also not persuasive. Dr. Heil indicated that the claimant was markedly impaired in his ability to interact with others, markedly impaired in his ability to concentrate and markedly impaired in his ability to manage his own affairs. However, Dr. Heil did not evaluate that claimant until November 2, 2018, which is almost one year after the claimant's date last insured. Further, the overall evidence in the record does not establish that the claimant was that limited prior to his date last insured. In addition, Dr. Heil also noted that the claimant was unable to work at the time of his initial assessment on November 2, 2018 but this opinion is neither valuable nor persuasive pursuant to 20 CFR 404.1520b(c) because such is a determination reserved for the Commissioner of the Social Security Administration (Exhibit 6F).
>
> In sum, the evidence set forth above establishes that prior to the claimant's date last insured, the claimant had the residual functional capacity to perform light work except occasional climbing of ramps and stairs, ladders, ropes and scaffolds; must avoid concentrated exposure to unprotected heights; and is limited to occasional kneeling, crouching and crawling.

(*Id.* at 16.)

"At the second step of sequential evaluation . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do **basic work activities**." TITLES II AND XVI: MEDICAL IMPAIRMENTS THAT ARE NOT SEVERE, SSR 85-28, 1985 WL 56856, at *4 (emphasis added). SSR 85-28 explains further:

13

> By definition, basic work activities are the abilities and aptitudes necessary to do most jobs. In the absence of contrary evidence, it is reasonable to conclude that an individual whose impairments do not preclude the performance of basic work activities is, therefore, able to perform his or her past relevant work. If the medical evidence establishes only a slight abnormality(ies) which has no more than a minimal effect on a claimant's ability to do basic work activities, but evidence shows that the person cannot perform his or her past relevant work because of the unique features of that work, a denial at the "not severe" step of the sequential evaluation process is inappropriate. The inability to perform past relevant work in such instances warrants further evaluation of the individual's ability to do other work considering age, education and work experience.

(*Id.*) (footnote omitted).

The Court notes most of the authority on which Christoffer relies consists of non-binding precedent from outside the Sixth Circuit. (Doc. No. 6 at 9-12.) Indeed, Christoffer cites to only two cases from within the Sixth Circuit in support of his argument that the ALJ's finding at Step Two that Christoffer had mild mental limitations in his ability to perform basic work activities required an explanation at Step Four as to how the "ALJ implicitly concluded that Plaintiff's mental impairments have absolutely no impact whatsoever on his capacity to perform the far more complex mental activities required for the performance of 'highly skilled' work." (*Id.* at 9-11.) In addition, the Court recognizes that the evidence supporting Christoffer's mental impairments during the relevant period is limited.

That said, however, the ALJ found, to Christoffer's favor, that Christoffer had mild impairments in his ability to perform basic work activities in all four of the Paragraph B criteria at Step Two but then found Christoffer capable of performing his past highly skilled work, without any explanation as to how those two findings are not in conflict with each other. The Court finds that this case is factually analogous to a recent Western District of Kentucky case, *William G. v. O'Malley*, Civil Action No. 3:23-cv-00103-LLK, 2024 WL 1141019 (W.D. Ky. Mar. 15, 2024). As is the case here, the ALJ found the claimant in *William G.* had mild limitations in the four functional areas of the Paragraph B criteria but, without explanation, found the claimant capable of performing skilled past work as a nurse instructor and case

14

manager. *Id.* at *2. The Western District of Kentucky, finding the case before it similar to *Kohne v. Commissioner*, 2023 WL 5220853 (E.D. Ky. Aug. 14, 2023), determined that "[j]ust as an ophthalmic technician is a public-facing, skilled job that makes it debatable (absent discussion by the ALJ) whether such job can be performed by a person with even "mild" mental limitations, it is unclear whether Plaintiff's "mild" mental limitations preclude performance of his highly-skilled past relevant work as a nurse instructor and case manager." 2024 WL 1141019, at *3. Therefore, the Western District of Kentucky held that "the ALJ's decision failed to build an accurate and logical bridge between the ALJ's finding that Plaintiff's depression caused him to have mild mental functioning limitations and the ALJ's RFC, which included no mental health impairment limitations." *Id.*

The Western District of Kentucky also distinguished *Wardlow v. Commissioner*, No. 3:20-cv-00828-RSE, 2022 WL 1748607 (W.D. Ky. May 31, 2022), on which the Commissioner relied, as follows:

> First, whereas the ALJ in the present case did not consider whether Plaintiff's mild mental limitations would preclude his highly skilled past relevant work, in *Wardlow*, the ALJ "specifically indicates he considered Wardlow's mild limitations under the 'paragraph B' criteria in forming his RFC determination." *Wardlow*, 2022 WL 1748607, at *6.
>
> Second, it was of critical importance to the ALJ's denial decision that Plaintiff could perform past relevant work. As indicated above, if unable to perform past relevant work, an ultimate finding of "disability" would have been directed by Rule 202.06 of Appendix 2 of the regulations. Wardlow, in contrast, was a younger individual capable of work at all exertional levels. The ALJ found that Wardlow could perform past relevant work and alternatively could perform a significant number of other jobs in the national economy.
>
> Third, whereas the ALJ found that Plaintiff retains the ability to perform highly skilled work as a nurse instructor and case manager, the ALJ found that Wardlow retains the ability to perform relatively unskilled work as a factory clerk, hotel clerk, hand packer, and self-service gas station cashier. The possibility that even "mild" mental limitation may interfere with the ability to perform past relevant work is much more pronounced when that work was highly skilled.

2024 WL 1141019, at *4.

As was the case in *William G.*, "it was of critical importance to the ALJ's denial decision that [Christoffer] could perform past relevant work."  If the ALJ found Christoffer unable to perform his past relevant work, Christoffer would have been found disabled pursuant to the Grids because of his age and his lack of transferrable skills.  (Tr. 39-40, 52; 20 CFR Part 404, Subpart P, Appendix 2, Grid Rule 202.06.)

The Court notes that the case at bar is factually distinguishable from *Cameron v. Commissioner of Social Security*, No. 1:23-cv-1371, 2024 WL 406940 (N.D. Ohio Jan. 18, 2024). Although the Commissioner cites this case for the proposition that "'an ALJ is not required to include in an RFC any of the ALJ's mild paragraph B criteria findings from step two'" (Doc. No. 8 at 8), and not to rebut Christoffer's argument regarding "the ALJ's step-four finding that Plaintiff could return to his highly skilled past relevant work" (*id.*), Christoffer distinguishes this case in his reply brief (Doc. No. 9 at 5). Therefore, the Court addresses it briefly.  In *Cameron*, the ALJ found the claimant had no limitations in her ability to understand, remember, or apply information and concentrate, persist, or maintain pace and mild limitations in her ability interact with others and adapt or manage herself. 2024 WL 406940, at *4. At Step Four, the ALJ found the claimant capable of performing her past relevant work as a social worker and social services case worker. *Id.* at *3.  However, on judicial review, Cameron challenged only the ALJ's failure to "either (1) include in the RFC assessment the mild mental limitations she found at step two or (2) explain why she omitted them" (*id.* at *4); Cameron's counsel did not raise the argument present here, that the ALJ needed to explain how Christoffer could return to highly skilled past work if he had impairments in his ability to perform basic work activities.  In addition, the Court cannot tell from the *Cameron* decision whether the claimant was of advanced age. 2024 WL 406940.  Furthermore, Cameron failed to include her depression as a basis for disability in her disability application, and neither Cameron nor her attorney "mentioned Cameron's depression" at the hearing.  2024 WL 406940, at *7.  Here,

Christoffer included his major depression with psychosis, generalized anxiety disorder, panic attacks, psychosis not otherwise specified, rule out schizoaffective disorder depressive type, rule out cluster A or C personality disorder, post-traumatic stress disorder, and hoarding disorder as grounds for disability in his disability application. (Tr. 79.) In addition, Christoffer's counsel argued at the hearing that Christoffer had "either a complete inability to perform basic work related activities based on psychological impairments or limitations for unskilled, light work, which I believe would preclude past work and result in GRID." (*Id.* at 39.) Christoffer also testified to his mental impairments at the hearing. (*Id.* at 41-43, 48.) Therefore, the Court finds *Cameron* distinguishable from the case at bar and that it does not serve as grounds to reject Christoffer's argument.

For all of these reasons, the undersigned recommends the Court find the ALJ erred in failing to build an accurate and logical bridge from the evidence to his conclusions, requiring remand.

### VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be VACATED AND REMANDED.

Date: July 15, 2025             *s/ Jonathan Greenberg*
                                          Jonathan D. Greenberg
                                          United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**